UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| A.C., a minor by and through his guardian, MARIA CARBAJAL,<br><br>Plaintiff,<br><br>v.<br><br>NINTENDO OF AMERICA INC.,<br><br>Defendant. | C20-1694 TSZ<br><br>ORDER |

THIS MATTER comes before the Court on the Motion to Compel Arbitration ("Motion"), docket no. 16, brought by Defendant Nintendo of America Inc. ("Nintendo"). Having reviewed all papers filed in support of, and in opposition to, the Motion, the Court enters the following order GRANTING the Motion.

**Background**

In March 2017, Nintendo made a new videogame console, the Nintendo Switch ("Switch"), available for purchase. Kiel Decl. at ¶ 2 (docket no. 17). The standard packaging on the Switch informs purchasers of Nintendo's End-User License Agreement ("EULA"). Id. at ¶ 7. Specifically, the package contains language stating that "[b]y using the Nintendo Switch system, you accept the license agreement available at

ORDER - 1

1  support.nintendo.com/Switch/license." Id. Users are also informed of the EULA on the

2  Switch itself when they power it on for the first time. Id. at ¶ 9; Ex. B to Kiel Decl.

3  (docket no. 17 at 10–11). This screen states that "[b]y selecting the Accept button, you

4  acknowledge that you have read and agree to be bound by the End-User License

5  Agreement. If you do not agree, stop using this system." Id. at 10. The screen also

6  contains a hyperlink to the EULA. Id. Users must select the Accept button to advance to

7  the next screen and use the Switch for gaming. Kiel Decl. at ¶ 19. If a User does not

8  want to accept the EULA in its entirety, he or she can return the Switch for a full refund.

9  Ex. A to Kiel Decl. ("EULA"), docket no. 17 at 7.

10  The EULA contains an arbitration provision that, in relevant part, provides as

11  follows:

> 7. **Dispute Resolution; Binding Individual Arbitration; Class Action Waiver.**
>
> . . . all disputes or claims arising out of or relating to this Agreement, including its formation, enforceability, performance, or breach . . . shall be finally settled by binding arbitration administered by the American Arbitration Association in accordance with the provisions of its Commercial Arbitration Rules and the supplementary procedures for consumer-related disputes of the American Arbitration Association (the "AAA").

17  Id. Users may opt out of the arbitration provision by providing written notice to

18  Nintendo within 30 days of purchase. Id. at 8.

19  In March 2017, Plaintiff A.C., a minor, purchased a Switch using his own money.

20  Complaint at ¶ 17 (docket no. 1). After a few months, A.C. alleges that the Joy-Con

21  controllers that came with his Switch began displaying a defect known as "drifting." Id.

22  at ¶ 18. The "drifting" defect occurs when the characters or items move without user

23

ORDER - 2

command or manual operation of the Joy-Con controller.  Id. at 3.  Based on this defect, A.C. filed a putative class action complaint against Nintendo.  Nintendo then moved to compel arbitration based on the EULA's arbitration provision.

**Discussion**

    **A.  Federal Arbitration Law**

The parties agree that the Federal Arbitration Act ("FAA") applies.  Motion at 7; Response (docket no. 18 at 3).  Under the FAA, "before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists."  Henry Schein, Inc. v. Archer & White Sales, Inc., 139 S. Ct. 524, 530 (2019).  If the parties entered into a valid agreement to arbitrate, and the agreement delegates threshold arbitrability questions to an arbitrator by "clear and unmistakable" evidence, all other arbitrability issues, including whether the agreement covers a particular controversy, must be determined by an arbitrator.  Id. at 529–30.

    **B.  Capacity to Contract**

A.C. asserts that the parties never formed a valid arbitration agreement because he, a minor, lacked the capacity to contract.  Minors, however, have the capacity to enter into contracts subject to disaffirmance under both California and Washington law.[1]  Cal. Fam. Code § 6700 ("[A] minor may make a contract in the same manner as an adult, subject to

---

[1] A.C. contends that California law applies to the issue of contract formation because he was a resident of California at the time of the purchase.  Response (docket no. 18 at 11–14).  The Court, however, need not decide this issue because the laws of both California and Washington (where Nintendo's headquarters is located) provide that a minor may enter into contracts subject to disaffirmance.

ORDER - 3

the power of disaffirmance."); RCW 26.28.030 ("A minor is bound, not only by contracts for necessaries, but also by his or her other contracts, unless he or she disaffirms them within a reasonable time after he or she attains his or her majority.").

A.C. cites section 1556 of the California Civil Code to argue that minors lack the capacity to form contracts under California law. Response at 13. The Civil Code, however, makes clear that "[t]he capacity of a minor to contract is governed by Division 11 (commencing with Section 6500) of the Family Code." Cal. Civ. Code § 1557. Moreover, California case law, including the cases cited by A.C., confirms that minors may enter into contracts on most topics subject to disaffirmance. Berg v. Traylor, 148 Cal. App. 4th 809, 818 (2007) (citing Ballard v. Anderson, 4 Cal. 3d 873, 878 (1971)); Lopez v. Kmart Corp., No. 15-cv-01089-JSC, 2015 WL 2062606, at *4 (N.D. Cal. May 4, 2015) ("California law plainly provides that a minor has the capacity to contract, with the exception of those contracts specifically prohibited."). The Court concludes that A.C. had the capacity to form a contract under both California and Washington law.

**C. Disaffirmance**

A.C. contends that even if the parties formed an agreement to arbitrate, that agreement is not valid because he now disaffirms it. The Court does not reach this issue, however, because, as it does not relate to contract formation, the Court determines that the parties agreed to have an arbitrator decide it. See Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc., 925 F.2d 1136, 1140 (9th Cir. 1991) (noting that where there is a delegation provision, issues relating to whether a contract is voidable, such as infancy of

a party, are decided by an arbitrator); <u>Prima Paint Corp. v. Flood & Conklin Mfg. Co.</u> <u>388 U.S. 395, 403–04 (1967)</u>.

If a court determines that the parties formed a valid arbitration agreement, it then turns to the question of whether the arbitration agreement contains a provision delegating all other arbitration-related issues, including the scope of the arbitration agreement, to an arbitrator. See <u>Schein</u>, 139 S. Ct. at 529–30. If an arbitration provision contains a delegation provision assigning arbitrability questions to an arbitrator by "clear and unmistakable" evidence, the court's inquiry ends. <u>Chiron Corp. v. Ortho Diagnostic Sys.</u>, 207 F.3d 1126, 1130 (9th Cir. 2000) (concluding that the FAA mandates "that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed"). The American Arbitration Association ("AAA") rules state that an arbitrator has the power to determine the scope of the arbitration agreement and the arbitrability of any claim or counterclaim. See <u>Brennan v. Opus Bank</u>, 796 F.3d 1125, 1130 (9th Cir. 2015); <u>Willis v. Fitbit, Inc.</u>, No. 19-cv-01377-DMS, 2020 WL 417943, at *3 (S.D. Cal. Jan. 27, 2020). Reference to the AAA rules in an arbitration agreement constitutes "clear and unmistakable evidence" that the parties agreed to delegate all other issues to the arbitrator. <u>Brennan</u>, 796 F.3d at 1130; <u>see also</u> <u>Three Valleys Mun. Water Dist.</u>, 925 F.2d at 1140.

A.C. asserts that <u>Brennan</u>'s holding does not apply here because A.C. is not a "sophisticated party." Response at 8–9. In <u>Brennan</u>, the Ninth Circuit stated that although its holding was limited to disputes involving sophisticated parties, it "should not be interpreted to require that the contracting parties be sophisticated" and "does not

foreclose the possibility that this rule could also apply to unsophisticated parties." 796 F.3d at 1130. Since Brennan, "the greater weight of authority . . . concludes that Brennan's holding also applies to disputes involving non-sophisticated parties." Chen v. Sierra Trading Post, Inc., No. 2:18-cv-1581-RAJ, 2019 WL 3564659, at *4 (W.D. Wash. Aug. 6, 2019) (summarizing cases); cf. G.G. v. Valve Corp., 799 F. App'x 557, 558 (9th Cir. 2020) (determining that, under Washington law, sophistication of teenage plaintiffs did not change conclusion that they had clearly and unmistakably agreed to arbitrate questions of arbitrability because the arbitration agreement incorporated the AAA rules).

### D. Unconscionability of the Delegation Provision

Finally, A.C. argues that the delegation provision is unconscionable. "Because a court must enforce an agreement that . . . clearly and unmistakably delegates arbitrability questions to the arbitrator, the only remaining question is whether the particular agreement *to delegate* arbitrability . . . is itself unconscionable." Brennan, 796 F.3d at 1132 (citing Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63 (2010)).

The parties dispute whether California or Washington law applies to the analysis of whether the delegation provision is unconscionable. "When parties dispute choice of law, there must be an actual conflict between the laws or interests of Washington and the laws or interests of another state before Washington courts will engage in a conflict of laws analysis." Seizer v. Sessions, 940 P.2d 261, 264 (1997). An actual conflict exists "[w]hen the result of the issues is different under the law of the two states." Id. Here, no actual conflict exists because the Court would reach the same result—namely that the delegation provision is not unconscionable—under both California and Washington law.

See Wiseley v. Amazon.com, Inc., 709 F. App'x. 862, 863 (9th Cir. 2017) (noting that "Washington's and California's . . . protections against unconscionable contracts appear to be substantially similar"). Therefore, the Court applies Washington law to the unconscionability analysis.

Under Washington law, a contract can be procedurally or substantively unconscionable. Adler v. Fred Lind Manor, 103 P.3d 773, 781 (2004). A contract is procedurally unconscionable when there is a lack of a meaningful choice under all the circumstances. Id. A contractual clause is substantively unconscionable when it is "one-sided or overly harsh." Adler, 153 Wn.2d at 344 (citation omitted).

A.C. asserts that the delegation provision is procedurally unconscionable because Nintendo presented it on a "take-it-or-leave-it basis" and did not attach the AAA rules. Response (docket no. 18 at 10). The adhesive nature of a contract, however, does not render it procedurally unconscionable under Washington law. Zuver v. Airtouch Commc'n, Inc., 153 Wn.2d 293, 304–05 (2004). Here, A.C. had a meaningful choice to accept the delegation provision, to opt out of the arbitration clause (including the delegation provision), or to reject the entire EULA and return his Nintendo Switch. See EULA at 7–8. Further, failure to attach the AAA rules did not deprive A.C. of a meaningful choice because the following clause provided the website for accessing the AAA rules and contact information. See id.

A.C. also argues that the delegation provision is substantively unconscionable because the AAA Commercial Arbitration rules put him at a disadvantage; A.C. also argues that the intellectual property carve-out clause lacks mutuality because Nintendo is

more likely to bring intellectual property claims.  Response at 10–11.  Regarding the AAA Commercial Arbitration rules, A.C. does not explain how those rules disadvantage him and, even so, the AAA Consumer Rules apply here.  See EULA at 7.  Further, whether Nintendo is more likely to bring intellectual property claims is immaterial because, under Washington law, a provision giving only one party the option of requiring arbitration is not substantively unconscionable.  Satomi Owners Ass'n v. Satomi, LLC, 167 Wn.2d 781, 815–16 (2009).[2]  The Court concludes that the delegation provision is not unconscionable.

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1)     Defendant's Motion, docket no. 16, is GRANTED;

(2)     The Court STAYS the proceedings pending the outcome of arbitration pursuant to 9 U.S.C. § 3.  See Ekin v. Amazon Servs., LLC, No. C14-0244-JCC, 2015 WL 11233144, at *1 (W.D. Wash. Feb. 10, 2015);

---

[2] As previously stated, the Court would reach the same conclusion under California law.  Under California law, the adhesive nature of a contract "would give rise to a low degree of procedural unconscionability at most."  Poublon v. C.H. Robinson Co., 846 F.3d 1251, 1261–62 (9th Cir. 2017).  California law also does not require a party to attach the AAA rules to a contract that incorporates them by reference.  Id. at 1262.  Regarding substantive unconscionability, Nintendo being more likely to bring intellectual property claims is not unconscionable because California law gives Nintendo "an extra 'margin of safety' based on legitimate business needs."  See Tompkins v. 23andMe, Inc., 840 F.3d 1016, 1031 (9th Cir. 2016); see also Wiseley, 709 F. App'x. at 865.

(3) The parties are DIRECTED to file a Joint Status Report within fourteen (14) days after the completion of arbitration or by December 31, 2021, whichever occurs earlier; and

(4) The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 29th day of April, 2021.

Thomas S. Zilly
United States District Judge

ORDER - 9